FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

9.24.2025

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:24-cr-25(S4)-HES-MCR

NATHANIEL THOMAS HATCHER, III

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, NATHANIEL THOMAS HATCHER, III, and the attorney for the defendant, Richard Komando, Esq., mutually agree as follows:

### A.     Particularized Terms

1.     Counts Pleading To

The defendant shall enter a plea of guilty to Counts One, Two, Eight, and Nine of the Fourth Superseding Indictment.  Count One charges the defendant with conspiring to distribute and possess with the intent to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  Count Two charges the defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  Count Eight charges the defendant with committing a drive-by shooting in furtherance of a major drug offense, and aiding and abetting, in violation of 18 U.S.C. §§ 36(b)(1) and 2. Count Nine charges the

Defendant's Initials _____            1            AF Approval _____

defendant with discharging a firearm during and in relation to a crime of violence, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.

    2.    <u>Minimum and Maximum Penalties</u>

Count One is punishable by a mandatory minimum term of imprisonment of 10 years up to life, a fine of up to $10,000,000, or both a fine and imprisonment, a term of supervised release of at least 5 years, and a special assessment of $100 due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by up to 5 years' imprisonment and the possibility of an additional term of supervised release.

Count Two is punishable by up to 20 years' imprisonment, a fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater, or both a fine and imprisonment, a term of supervised release of up to 3 years, and a special assessment of $100 due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by up to 2 years' imprisonment and the possibility of an additional term of supervised release.

Count Eight is punishable by up to 25 years' imprisonment, a fine of up to $250,000, or both a fine and imprisonment, a term of supervised release of up to 5 years, and a special assessment of $100 due on the date of sentencing. A violation of terms and conditions of supervised release is punishable by up to 3 years' imprisonment and the possibility of an additional term of supervised release.

Defendant's Initials _____      2

Count Nine is punishable by a mandatory minimum term of imprisonment of 10 years up to life, to be served consecutively to any other sentence imposed, a fine of up to $250,000, or both a fine and imprisonment, a term of supervised release of up to 5 years, and a special assessment of $100 due on the date of sentencing. A violation of terms and conditions of supervised release is punishable by up to 5 years' imprisonment and the possibility of an additional term of supervised release.

The total cumulative penalties for Counts One, Two, Eight, and Nine, are a minimum mandatory term of 20 years' imprisonment up to life plus 45 years, a maximum fine of up to $11,000,000, or both a fine and imprisonment, a term of supervised release of at least 5 years, and a special assessment of $500 due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by up to 15 years' imprisonment and the possibility of an additional term of supervised release.

3.    *Alleyne v. United States and Apprendi v. New Jersey*

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of 20 years' imprisonment up to life as to Counts One and Nine because the following facts have been admitted by the defendant and are established by this plea of guilty:

Defendant's Initials _____    3

The conspiracy involved 1000 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance. Additionally, the defendant and others committed a crime of violence, during and in relation to which, a firearm was used, carried, and discharged.

4.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

First:    two or more people in some way agreed to try to accomplish an unlawful plan, the object of which was to distribute and possess with the intent to distribute marijuana, a Schedule I controlled substance;

Second:    the defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third:    the object of the unlawful plan was to distribute and possess with the intent to distribute 1000 kilograms or more of a mixture and substance containing a detectable amount of marijuana.

The elements of Count Two are:

First:    two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1956; and

Second:    the defendant knew about the plan's unlawful purpose and voluntarily joined in it.

Defendant's Initials _____    4

The elements of Count Eight are:

First:        the defendant and others, aiding and abetting each other,
              fired a weapon into a group of two or more persons, in
              furtherance of a major drug offense, specifically a
              conspiracy to distribute a controlled substance, as charged
              in Count One of the Fourth Superseding Indictment;

Second:       the defendant and others, aiding and abetting each other,
              fired the weapon with the intent to intimidate, harass,
              injure, or maim; and

Third:        in the course of firing the weapon, the defendant and
              others caused grave risk to human life.

The elements of Count Nine are:

First:        the defendant and others, aiding and abetting each other,
              committed the crime of violence charged in Count Eight of
              the Fourth Superseding Indictment;

Second:       during and in relation to that crime of violence, the
              defendant and others, aiding and abetting each other,
              knowingly used and carried a firearm; and

Third:        the firearm was discharged.

5.    Counts Dismissed

At the time of sentencing, the remaining counts against the defendant,
Counts Three, Four, Five, Six, Seven, Ten, Eleven, and Twelve will be
dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and
voluntarily any and all assets and property, or portions thereof, subject to forfeiture,
pursuant to 21 U.S.C. § 853, 18 U.S.C. § 924(d), 18 U.S.C. § 981(a)(1)(C), 18 U.S.C.

Defendant's Initials _HM_                        5

§ 982(a)(1), and 28 U.S.C. § 2461(c), whether in the possession or control of the

United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the $2.2 million

in proceeds the defendant personally obtained, as the result of the drug conspiracy to

which the defendant is pleading guilty. The defendant acknowledges and agrees

that: (1) the defendant obtained this amount as a result of the commission of the

conspiracy, and (2) as a result of the acts and omissions of the defendant, the

proceeds have been transferred to third parties and cannot be located by the United

States upon the exercise of due diligence. Therefore, the defendant agrees that,

pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other

property of the defendant (substitute assets), up to the amount of proceeds the

defendant obtained, as the result of the offense(s) of conviction. The defendant

further consents to, and agrees not to oppose, any motion for substitute assets filed

by the United States up to the amount of proceeds obtained from commission of the

offense(s) and consents to the entry of the forfeiture order into the Treasury Offset

Program. The defendant agrees that forfeiture of substitute assets as authorized

herein shall not be deemed an alteration of the defendant's sentence.

      The defendant additionally agrees that since the criminal proceeds have

been transferred to third parties and cannot be located by the United States upon the

exercise of due diligence, the preliminary and final orders of forfeiture should

authorize the United States Attorney's Office to conduct discovery (including

depositions, interrogatories, requests for production of documents, and the issuance

Defendant's Initials _____                6

of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the

Defendant's Initials _MM_          7

defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Defendant's Initials _____     8

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.    Standard Terms and Conditions**

1.    <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

Defendant's Initials _H M_                9

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $300, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant

Defendant's Initials _MM_                    10

or defendant's counsel, and to correct any misstatements or inaccuracies. The
United States further reserves its right to make any recommendations it deems
appropriate regarding the disposition of this case, subject to any limitations set forth
herein, if any.

     5.    Financial Disclosures

     Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii),
the defendant agrees to complete and submit to the United States Attorney's Office
within 30 days of execution of this agreement an affidavit reflecting the defendant's
financial condition. The defendant promises that his financial statement and
disclosures will be complete, accurate and truthful and will include all assets in
which he has any interest or over which the defendant exercises control, directly or
indirectly, including those held by a spouse, dependent, nominee or other third party.
The defendant further agrees to execute any documents requested by the United
States needed to obtain from any third parties any records of assets owned by the
defendant, directly or through a nominee, and, by the execution of this Plea
Agreement, consents to the release of the defendant's tax returns for the previous five
years. The defendant similarly agrees and authorizes the United States Attorney's
Office to provide to, and obtain from, the United States Probation Office, the
financial affidavit, any of the defendant's federal, state, and local tax returns, bank
records and any other financial information concerning the defendant, for the
purpose of making any recommendations to the Court and for collecting any
assessments, fines, restitution, or forfeiture ordered by the Court. The defendant

Defendant's Initials 〽️     11

expressly authorizes the United States Attorney's Office to obtain current credit

reports in order to evaluate the defendant's ability to satisfy any financial obligation

imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor

bound by this agreement.  The Court may accept or reject the agreement, or defer a

decision until it has had an opportunity to consider the presentence report prepared

by the United States Probation Office.  The defendant understands and

acknowledges that, although the parties are permitted to make recommendations and

present arguments to the Court, the sentence will be determined solely by the Court,

with the assistance of the United States Probation Office.  Defendant further

understands and acknowledges that any discussions between defendant or

defendant's attorney and the attorney or other agents for the government regarding

any recommendations by the government are not binding on the Court and that,

should any recommendations be rejected, defendant will not be permitted to

withdraw defendant's plea pursuant to this plea agreement.  The government

expressly reserves the right to support and defend any decision that the Court may

make with regard to the defendant's sentence, whether or not such decision is

consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to

impose any sentence up to the statutory maximum and expressly waives the right to

Defendant's Initials _____        12

appeal defendant's sentence on any ground, including the ground that the Court

erred in determining the applicable guidelines range pursuant to the United States

Sentencing Guidelines, except (a) the ground that the sentence exceeds the

defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the

United States Sentencing Guidelines; (b) the ground that the sentence exceeds the

statutory maximum penalty; or (c) the ground that the sentence violates the Eighth

Amendment to the Constitution; provided, however, that if the government exercises

its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then

the defendant is released from his waiver and may appeal the sentence as authorized

by 18 U.S.C. § 3742(a).

       8.    <u>Middle District of Florida Agreement</u>

      It is further understood that this agreement is limited to the Office of the

United States Attorney for the Middle District of Florida and cannot bind other

federal, state, or local prosecuting authorities, although this office will bring

defendant's cooperation, if any, to the attention of other prosecuting officers or

others, if requested.

       9.    <u>Filing of Agreement</u>

      This agreement shall be presented to the Court, in open court or <u>in</u>

<u>camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at

the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials _____      13

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be

Defendant's Initials _____    14

adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____    15

13.  Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this ___24th___ day of ___September___, 2025.

GREGORY W. KEHOE
United States Attorney


_____
NATHANIEL HATCHER, III
Defendant

KIRWINN MIKE
Assistant United States Attorney


_____
RICHARD KOMANDO
Attorney for Defendant

ELISABETH ADAMS
Assistant United States Attorney


FRANK TALBOT
Assistant United States Attorney
Chief, Jacksonville Division


Defendant's Initials _____          16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:24-cr-25(S4)-HES-MCR

NATHANIEL THOMAS HATCHER, III

<u>PERSONALIZATION OF ELEMENTS</u>

**<u>As to Count One:</u>**

    1.    Do you admit that beginning on an unknown date, but no later than in or about 2016, and continuing through in or about April 2024, in the Middle District of Florida, and elsewhere, that you and at least one other person in some way agreed to try to accomplish an unlawful plan, the object of which was to distribute and possess with the intent to distribute marijuana, a Schedule I controlled substance?

    2.    Did you know the unlawful purpose of the plan and willfully join in it?

    3.    Was the object of the plan to distribute and possess with the intent to distribute 1000 kilograms or more of a mixture and substance containing a detectable amount of marijuana?

**<u>As to Count Two:</u>**

    1.    Do you admit that beginning on an unknown date, but no later than in or about October 2022, and continuing through in or about April 2024, in the Middle District of Florida, and elsewhere, that you and at least one other person agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1956(a)(1)(A)(i), that is, to conduct financial transactions that you knew involved the proceeds of the drug trafficking conspiracy charged in Count One, with the intent to promote the carrying on of that specified unlawful activity?

    2.    Do you admit that you knew the plan's unlawful purpose and voluntarily joined in it?

Defendant's Initials _____                17

**As to Count Eight:**

1.  Do you admit that on or about October 17, 2023, in the Middle District of Florida, in furtherance of a major drug offense, specifically a conspiracy to distribute a controlled substance as charged in Count One, that you and others, aiding and abetting each other, fired a weapon into a group of two or more persons?

2.  Did you and others fire the weapon with the intent to intimidate, harass, injure, or maim?

3.  Do you admit that in the course of firing the weapon, you and others caused grave risk to human life?

**As to Count Nine:**

1.  Do you admit that on or about October 17, 2023, in the Middle District of Florida, you and others, aiding and abetting each other, committed the crime of violence charged in Count Eight of the Fourth Superseding Indictment?

2.  Did you and others knowingly use and carry firearms during and in relation to that crime of violence?

3.  Was a firearm discharged?

Defendant's Initials _____    18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:24-cr-25(S4)-HES-MCR

NATHANIEL THOMAS HATCHER, III

FACTUAL BASIS

**As to Count One:**

Beginning on an unknown date, but not later than in or about 2016, and continuing through in or about April 2024, in the Middle District of Florida, and elsewhere, NATHANIEL HATCHER, III, the defendant, conspired with others to distribute and possess with the intent to distribute over 1000 kilograms of marijuana.

During the time of the conspiracy, the defendant served as the leader and organizer for the drug trafficking organization (DTO). The DTO transported kilogram-quantities of marijuana from growers and distributors in Northern California (primarily Sacramento) to Jacksonville, Florida. The defendant organized and oversaw regular flights from Jacksonville to Sacramento for himself and other members of the DTO, where they obtained marijuana. From Sacramento, the defendant and his co-conspirators transported the marijuana in suitcases on commercial flights back to Jacksonville, via commercial bus lines to Kentucky, or by shipping parcels through the U.S. mail. Upon returning to Jacksonville, they delivered the marijuana to multiple residences across the city, which had been rented

Defendant's Initials _____                 19

by the defendant on behalf of the DTO. The defendant and his co-conspirators
maintained these residences for the purpose of inventorying and pricing marijuana,
dividing quantities among the DTO's retail-level distributors, and facilitating
individual drug sales. They also possessed firearms at these locations to protect
themselves, the marijuana intended for distribution, and the proceeds generated from
their trafficking activities.

During the investigation, federal agents obtained and executed search
warrants for iCloud accounts and/or cellular phones belonging to the defendant and
two associates within the DTO. Agents recovered numerous text messages and
message threads between the defendant and various DTO members discussing the
acquisition, transportation, and distribution of marijuana. These communications
demonstrated the defendant's role in coordinating and directing drug transactions.
Additionally, text messages revealed that the defendant and others planned acts of
violence and physical retaliation in furtherance of the drug trafficking conspiracy.
The defendant is accountable for the distribution of 1,000 kilograms or more of
marijuana during the course of the conspiracy, through which he obtained
approximately $2.2 million in drug proceeds.

**As to Counts Two:**

Beginning on an unknown date but no later than October 2022, and
continuing through approximately April 2024, the defendant directed and oversaw
the collection and laundering of the DTO's drug proceeds. The DTO collected drug
proceeds in two primary ways: (1) through cash payments made directly to its

Defendant's Initials _TCM_                    20

distributors, and (2) via electronic payments through online banking applications,
including CashApp and Apple Pay.

The defendant personally collected, or directed others to collect, cash
payments and caused those funds to be deposited into bank accounts under his
control. In some instances, the proceeds were deposited into accounts controlled by
other DTO members, including the defendant's girlfriend or her sister, and
subsequently transferred to accounts controlled by the defendant.

In addition, the defendant coordinated—either personally or through others—
the transfer of electronic payments received via CashApp and Apple Pay into
accounts he controlled. The defendant also used these same platforms to transmit
payments to drug suppliers in California.

### As to Counts Three:

From in or about November 2022 through in or about January 2024, within
the Middle District of Florida, the defendant knowingly conspired with others to
purchase firearms from Federal Firearms Licensees ("FFLs") on behalf of himself
and other individuals, knowing and having reasonable cause to believe that the
firearms would be used, carried, possessed, or otherwise disposed of in furtherance of
a felony offense and/or a drug trafficking crime.

In June 2023, agents with Homeland Security Investigations (HSI) initiated an
investigation into the drug trafficking activities of the defendant and other members
of his DTO. In August 2023, agents from the Bureau of Alcohol, Tobacco, Firearms
and Explosives (ATF) joined the investigation after reviewing bank statements

Defendant's Initials _____                21

associated with the defendant and the DTO and identifying multiple large firearm purchases from FFLs in Jacksonville, Florida.

ATF agents obtained the corresponding transaction records and ATF Forms 4473. Through review of financial records, agents determined that a co-conspirator ("CC1") had conducted these firearm purchases on behalf of the defendant.

On January 9, 2023, CC1 purchased a Century Arms Micro-Draco pistol from St. Nicholas Gun and Sporting Goods ("St. Nicholas"), an FFL located at 4630 Blanding Boulevard, Jacksonville, Florida. In completing ATF Form 4473, CC1 falsely answered "yes" to Question 21.a, which asks, in substance, "Are you the actual transferee/buyer of the firearm(s) listed on this form?" In truth, CC1 knew he was acting on behalf of the defendant, who had provided CC1 with one of his personal debit cards to pay for the firearm.

Also on January 9, 2023, CC1 purchased a Manta Machining rifle and a Glock pistol from Money Mizer Pawn, an FFL located at 6677 Blanding Boulevard, Jacksonville, Florida. CC1 again falsely answered "yes" to Question 21.a, despite knowing he was purchasing the firearms for the defendant, and using the defendant's debit card.

On January 18, 2023, CC1 purchased two additional Century Arms Micro-Draco pistols from the St. Nicholas FFL. Once again, CC1 falsely answered "yes" to Question 21.a, even though he was purchasing the firearms for the defendant and used the defendant's debit card for payment.

Defendant's Initials _HH_                    22

HSI and ATF agents later reviewed a forensic extraction of CC1's cellular
phone, which contained text message conversations between CC1 and the defendant,
dating back to November 22, 2022. In these messages, the defendant and CC1
planned for CC1 to use his concealed carry permit to straw-purchase firearms from
gun stores on the defendant's behalf. Their conversations specifically referenced
purchasing "dracos," "glocks," and a ".308."

ATF agents confirmed that the firearms purchased by CC1 were manufactured
outside the state of Florida and had traveled in interstate commerce prior to their
acquisition from FFLs in Jacksonville, Florida.

When CC1 knowingly provided materially false statements on the ATF Forms
4473 to obtain these firearms for the defendant, he did so with knowledge and
reasonable cause to believe that the firearms would be used, carried, possessed, or
otherwise disposed of in furtherance of the defendant's ongoing drug trafficking
conspiracy. CC1 had direct knowledge of this fact because he was an active
participant in the DTO, which primarily trafficked large quantities of marijuana from
California to the Middle District of Florida.

The defendant and CC1 traveled together on commercial flights to transport
bulk cash and marijuana for the DTO and collected proceeds from drug sales. CC1
either physically delivered these proceeds to the defendant or his girlfriend, or
deposited the funds into bank accounts held by himself or the defendant. Text
messages between the defendant and CC1 further revealed that CC1 transported
firearms between multiple residences in Jacksonville that had been rented by the

Defendant's Initials _____    23

defendant—often through Airbnb—for the purpose of storing and distributing

marijuana. Both the defendant and CC1 knew and reasonably believed the firearms

would be used to protect drug stashes and DTO members during drug transactions.

On January 2, 2024, CC1 attempted to purchase two Century Arms Micro-

Draco pistols from Orange Park Gun and Pawn, an FFL located at 276 Blanding

Boulevard, Orange Park, Florida. The defendant was physically present with CC1

during this attempted purchase. CC1 again falsely answered "yes" to Question 21.a

on the ATF Form 4473, knowing he was attempting to purchase the firearms for the

defendant. This transaction was ultimately denied following a National Instant

Criminal Background Check System (NICS) alert.

In a separate NICS alert, agents learned that on December 19, 2023, the

defendant himself attempted to purchase two Century Arms Micro-Draco pistols

from Shooters of Jacksonville, an FFL located at 5085 University Boulevard West,

Jacksonville, Florida.

On September 14, 2023, deputies with the St. Johns County Sheriff's Office

recovered one of the Century Arms Micro-Draco pistols previously straw-purchased

by CC1 from St. Nicholas on the defendant's behalf. That firearm—bearing serial

number 22PMD37506—was recovered during a traffic stop in Elkton, Florida, along

with drugs unrelated to the defendant.

On July 12, 2023, officers with the Jacksonville Sheriff's Office (JSO)

recovered a Smith & Wesson 9mm pistol, bearing serial number FCY7081, and a

distributable quantity of marijuana from CC1's vehicle after it was repossessed.

Defendant's Initials _/\/ \/\/_                24

Agents traced the firearm to a March 17, 2021, purchase by CC1 from Cash City

Pawn, an FFL located at 1516 Leonid Road, Jacksonville, Florida.

Following his federal arrest, CC1 agreed to be interviewed by HSI and ATF

agents. During his interview, CC1 admitted to the conduct described in this Factual

Basis.

### As to Counts Eight and Nine:

On or about the evening of September 18, 2023, the defendant and other

members of the DTO coordinated a drug transaction with three individuals: A.S.O.,

W.L., and T.A.F. The parties agreed that the defendant would purchase

approximately $45,000 worth of marijuana from these individuals. Prior to the full

transaction, A.S.O., W.L., and T.A.F. traveled to a residence on River Road in

Jacksonville, Florida—premises rented by the defendant on behalf of the DTO and

used for storing and distributing marijuana, collecting drug proceeds, and as a

general gathering location. During this pre-transaction meeting, the defendant paid

approximately $3,000 in cash to the three individuals in exchange for one pound of

marijuana. The parties agreed that if the defendant was satisfied with the quality of

the marijuana, they would proceed with the larger transaction later that evening.

Unbeknownst to the participants, detectives with the Jacksonville Sheriff's

Office (JSO) were conducting proactive and covert surveillance on the River Road

residence as part of a separate gang-related investigation involving a member of the

DTO. During their surveillance, JSO detectives observed A.S.O., W.L., and T.A.F.

arrive at the residence in a Mercedes sedan. Detectives then observed the defendant

Defendant's Initials _____          25

engage in a hand-to-hand transaction with the front passenger of the vehicle, during which one pound of marijuana was exchanged for $3,000 in cash. Shortly after the Mercedes departed, JSO detectives conducted a traffic stop based on the suspicious transaction. The driver, T.A.F., consented to a search of his person and vehicle. Detectives recovered a small amount of cocaine and $3,000 in cash from T.A.F., who was subsequently arrested for Possession of Cocaine and transported to the Duval County Jail. At T.A.F.'s request, detectives released the vehicle to A.S.O. and W.L. Notably, the traffic stop occurred only a block or two away from the DTO's rented residence.

Following T.A.F.'s arrest, A.S.O. and the defendant attempted to complete the previously agreed-upon drug transaction. The two arranged to meet at a gas station along Old St. Augustine Road in Jacksonville. Present at the gas station were the defendant and other members of the DTO, who arrived in separate vehicles, as well as A.S.O. and W.L., who arrived in the same Mercedes sedan used earlier.

The planned drug transaction failed. Instead of providing bulk marijuana, A.S.O. and W.L. handed the defendant two suitcases filled with bedsheets and linens. After accepting the suitcases, the defendant gave A.S.O. and W.L. approximately $45,000 in cash, only realizing he had been deceived after they began to flee. In an attempt to stop their escape, the defendant grabbed onto the Mercedes as it sped away. A.S.O. and W.L. fled the scene, dragging the defendant a short distance into the street and causing him to sustain significant abrasions to his backside.

Defendant's Initials _____    26

Location data obtained from the defendant's cellular phone confirmed that his device was in the vicinity of the gas station on Old St. Augustine Road at approximately 11:45 p.m. that evening. Shortly after the failed transaction, the defendant sent text messages to A.S.O., demanding an explanation. In one message, the defendant warned A.S.O., 'you can still make this right.'"

On September 19, 2023, following the events of the previous evening, the defendant texted one of his drug suppliers stating, "may have to only get 50 pcs [pounds] tomorrow some one stole 44k last night." In response to the loss, the defendant directed members of the DTO to reschedule their flights to California for the purpose of re-supplying marijuana, moving the travel date up to September 20. The defendant emphasized the urgency of the situation and the need for the DTO to work nonstop over the next 30 days to recoup the $44,000 loss. Subsequently, the defendant and other members of the DTO began coordinating plans for retaliation in response to the robbery.

The DTO first identified T.A.F., A.S.O., and W.L. after the defendant contacted a former JSO officer via FaceTime video call. During that call, and at the defendant's request, the former officer unlawfully accessed and disclosed the full names of the three individuals by referencing the JSO incident report related to T.A.F.'s arrest the previous night. The disclosure was made without authorization and in violation of department policy and state law. The former officer was subsequently arrested, charged in Duval County, and has since pleaded guilty to Unauthorized Access.

Defendant's Initials _____        27

After obtaining the identities of the three subjects involved in the failed drug transaction, the defendant and other members of the DTO began tracking and cyber-stalking the subjects and their family members. Starting on September 19, 2023, the defendant and DTO members discussed plans to retaliate with physical violence, including threats directed at the family members. The defendant and others monitored the JSO inmate webpage to determine if T.A.F. had been released from the Duval County Jail. That same day, members of the DTO traveled to the jail and surveilled the entrance and exit areas from the parking lot, intending to follow T.A.F. upon release. The defendant and other DTO members also stalked the social media accounts of the three subjects and their family members. Discussions among the DTO included plans to travel to a residence belonging to one of the subjects' family members in Orlando for the purpose of retaliation.

On October 15, 2023, members of the DTO traveled to Jacksonville International Airport (JAX) and stole two vehicles from the Hertz Car Rental facility, including a red Dodge Charger sedan bearing Florida license plate KCIG88 and VIN 2C3DXBG0NH239012. The DTO coordinated the theft through text message communications.

On October 17, 2023, a member of the DTO appeared at the Duval County Courthouse in Jacksonville, Florida, for a scheduled court date on an unrelated state matter. The defendant and other DTO members were aware from the public court docket that T.A.F. also had a court appearance that day regarding the drug charge stemming from the September arrest.

Defendant's Initials _TUh_                28

Following T.A.F.'s hearing, the defendant and other DTO members followed
T.A.F. and S.S.O. from the courthouse to their vehicle, a Mercedes sedan. The
group then pursued the Mercedes southbound along Interstate 95. Two DTO
members traveled in the stolen red Dodge Charger; the defendant and another DTO
member were in the defendant's gray Audi SUV, bearing Kentucky license plate
D2M206; and an additional DTO member was in a red Mercedes.

At approximately 11:23 a.m., the red Dodge Charger, gray Audi SUV, and red
Mercedes boxed in the Mercedes sedan on I-95 South. The red Dodge Charger
positioned itself directly in front of the Mercedes, while the gray Audi SUV remained
to the Mercedes' right, with the median barrier to its left. A dashboard camera from a
nearby vehicle captured two DTO members—one in the red Dodge Charger and one
in the gray Audi SUV—leaning out of their respective vehicles' back left passenger
windows, each holding firearms.

Within seconds, multiple gunshots were fired from the red Dodge Charger and
gray Audi SUV into the Mercedes sedan, forcing the Mercedes to stop abruptly. The
gray Audi SUV then fled the scene at high speed, followed by the red Dodge
Charger, while the red Mercedes had already advanced ahead.

S.S.O. immediately called 911 dispatch, and St. Johns Sheriff's Office (SJSO)
deputies responded to the scene. They found T.A.F. suffering from a single gunshot
wound; he was airlifted to a trauma center for emergency treatment. S.S.O. sustained
no gunshot injuries but was transported to a hospital for medical evaluation and
treatment.

Defendant's Initials _____        29

On scene, deputies recovered approximately 25 spent 7.62 caliber shell casings. Ballistics analysis conducted through the National Integrated Ballistics Information Network (NIBIN) confirmed that two separate 7.62 caliber firearms were discharged during the shooting. The Mercedes sedan sustained multiple gunshot impacts to the passenger side, rear, front and hood, windshield, interior, and engine block.

Cell phone location data placed the defendant and other DTO members physically at the scene of the shooting on I-95 at the relevant time. The data further showed that the defendant and other members traveled together from the Duval County Courthouse southbound along I-95 prior to the shooting.

On October 18, 2023, the day following the shooting, the defendant and other DTO members exchanged text messages in which they agreed to delete incriminating communications from their iCloud accounts and to dispose of their cell phones.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

Defendant's Initials _____        30